Third case this morning is case number 4-1-6-0-1-8-9-Schmidt v. State Board of Elections for the appellate Jeffrey Meyer for the appellee Michael Kasper. Mr. Meyer, please proceed. May it please the Court. Good morning, Your Honor. Good morning, panel. I am Jeffrey Meyer. I am appearing today on behalf of the petitioner appellant, Julie Schmidt, who is present. This is an appeal of the Sangamon County Circuit Court's order affirming the State Officer Electoral Board's decision denying Ms. Schmidt's objection to the nominating papers of Anna Mohler, candidate for the Democratic nomination for State Representative in the 43rd District of Illinois, which is up in the Elgin area. Because this matter involves a matter of statutory construction or statutory interpretation, the standard of review is de novo, and that's from the Jackson-Hicks v. East St. Louis Board of Elections decision. The appellant raises four principal arguments in support of her appeal. The first is that the plain language of the election code contains no sequence of signing exception to the bar against signing nominating petitions or being a candidate for more than one party in a single election cycle under Section 8.8 of the election code. The second argument is that the Board's interpretation of Section 8.8 inhibits achieving its public policy purpose of preventing one party from manipulating the primary election of candidates in the other political party. The third argument is that Candidate Mohler's act of first signing her own nominating petitions prior to signing the nominating petitions of a Republican candidate in the same election cycle does not render her own nominating papers to be valid. And lastly, the petitioner appellant argues that the petitioner's interpretation does not render Section 8.8 of the election code unconstitutional as advanced in argument by the appellee. As to the first argument as to the plain language of the statute, Section 8.8 provides that, that a qualified primary elector of a party may not sign the petition for or be a candidate in the primary election of more than one party. Counsel, what is the remedy in the statute for a violation of those two things? For a violation of signing in more than one or being a candidate in more than one. Yes, what's the statutory remedy? What's outlined in the statute? If you are a candidate and you violate Section 8.8, the remedy is that you are ineligible to be a candidate for election in that election cycle. And where does it say that? Well, the Rosenzweig's decision is what I think determines the remedy. And the Rosenzweig court held that the proper remedy for an individual who violates Section 8.8, a candidate who violates Section 8.8 of the election code, is that they're ineligible to be a candidate in that election cycle. So you agree there's no language in the statute that really tells you what the remedy is. You have to rely on case law. As to the remedy, yes, I would agree that you have to rely on case law. Section 8.8, as I was saying, the Rosenzweig court found that this section is a bar to not only being a candidate for more than one party or signing petitions for candidates in one political party, but of signing petitions for more than one party. That case also cited Watkins favorably, though, did it not? I think it does talk to Watkins. But I don't think it relies on Watkins in the sense that the appellee would have this court understand it relies on Watkins. The Watkins decision itself is talking about a factually dissimilar situation. It's talking about a circumstance where we're determining what signatures on a candidate's nominating petition is valid. But it's not talking about whether the nominating papers themselves for the candidate are valid. So I don't think it's central to the decision that the Rosenzweig court reaches. I think the Rosenzweig court relies on the statutory language more than it does on Watkins' decision. But in Rosenzweig, they do mention the fact that a person signing and nominating petitions for more than one party, the first signature is valid and all subsequent signatures are invalid. And they cite Watkins for that proposition. That's correct, Your Honor. And they also then say that that does not end their analysis. They then go on to view Section 8.8 and determine whether or not it had an adverse impact on the eligibility of the candidate. Well, they said that because there was no candidate in Watkins, was there? No, there was not. Well, that's why it didn't end their analysis, correct? I would agree, Your Honor. Okay. And Watkins has been around now since, what is it, 1984? It has been around since, I believe, 1984. And the General Assembly hasn't addressed the Watkins interpretation of the statute? Well, no, but this is also, I think, a case of first impression under these specific facts. I'm not aware of any case that's reached the appellate court on these specific facts. So it may just be that it hasn't come to the attention of the legislature that this is an issue that needs to be addressed, though it has now come up as an issue in at least three cases in the last three years. And those are all cited in our brief. There's the Mangi case, the Instant case, and if you'll bear with me for a second. Also the Frey v. Allegretti, I believe I'm probably mispronouncing that, but the Frey v. Allegretti case. So these facts have now come up three times, which is, I think, one of the arguments as to why this is a case that The second argument that we advance is that the board's interpretation of Section 8.8 encourages party rating rather than actually preventing. And this is the real issue, the real concern, I think, that I have with the Watkins decision itself. Watkins is addressing one way that one individual or party can interfere with the other political party's primary process. It's addressing, I think, what they call false flag candidates, where you have a member of Party A who runs as a candidate in Party B with the hope that that individual gets elected and then kind of lays down for the election of Party B's real candidate. And in the Watkins case, the rule that they enumerate in that case would prevent that. But it doesn't address the kind of party rating we see in this case. Because under Watkins, if you sign for the individual first, then your subsequent signatures are invalid. So you can't plant the false flag candidate and then support your own. But what you have in this case is a factually dissimilar circumstance. And the Watkins rule doesn't prevent this type of party rating. It actually promotes it. You have a situation here, and I'm not saying that this is Ms. Moeller's intent. I don't think that that's relevant. But you have, if you follow the rule that the Board of Elections has enumerated in this case and that the Circuit Court affirmed in this case, what you have is a situation where if I want to influence Party B's election, all I have to do is have all of my supporters and me as a candidate myself sign my own nominating petition first. Then I can go out, my supporters and I, we can sign all kinds of nominating petitions for candidates in Party B. And then after the candidates in Party B who know nothing about that file their nominating papers, we walk into the State Board of Elections and file an objection to all their papers saying they're invalid because we signed ours first. And the rule in Watkins does not prevent that party rating. It actually promotes that kind of party rating. I think Watkins needs to be held to its facts. It addresses false flag candidates. It addresses nominating petition signatures and determining what's a valid nominating petition signature under those circumstances. But it doesn't address the party rating that we have, at least the possibility to have, in facts such as prevented in this case. That's the real issue, I think, with the Watkins decision. So to the extent that the Rosenzweig Court relies on it, I think that would be in error because of the fact that it's not promoting the public policy purpose that Section 8.8 is, or the kind of thing that Section 8.8 is supposed to be preventing from a public policy standpoint. The State has a legitimate interest in curtailing party rating and preserving the order. Counselor, if I'm understanding your argument, you don't think you would have a stronger case if Mulder had signed Wegman's petition first? Oh, sure. I think that would be a clear-cut case. That's Rosenzweig. Well, isn't that an acknowledgment that the sequence does make a difference then? I don't think it's determinative. It's determinative under Rosenzweig's analysis, perhaps. But again, that's not what's in the statute itself. The statute itself says nothing about sequencing. And Rosenzweig actually talks about this in the context of an election cycle. So I don't think sequencing is central to their holding. The third argument that we advance is that Mulder's act of first signing her own nominating petitions before that of a Republican candidate in the same election cycle does not render her nominating petitions to be valid. Mulder argues that her act of signing her nominating petition first locked her in as a Democrat for the election cycle. And the board appears to have accepted this argument. It's error, one, because, as I was alluding to, the Rosenzweig court I don't think relies on sequencing of signing and rendering its decision. The court was concerned with the totality of what happened in the same election cycle in the Rosenzweig case. They ruled you can't sign a Democratic nominating petition and then run as a Republican. Of course, even if sequencing is relevant, I think it's important to note that Mulder in this case did sign a Republican candidate's nominating petition and then file after that to run as a Democrat. The second item, the court is not bound by the board and circuit court's broad interpretation of Watkins. As I mentioned before, Watkins is distinguishable and there's cause to question its reasoning under the unique facts of this case. The appellee argues that stare decisis has an application here and that this court is somehow bound by Watkins because of stare decisis principles. But where the rationale of a former case is based upon a misstatement of law, reexamination may be warranted. Moreover, stare decisis does not prevent mistakes in reasoning from later being corrected, even if the mistake has been followed by courts for many years. And, Your Honor, I know you mentioned that the Watkins case is 30 years old and that's true, but I think there are some inconsistencies or some errors in its reasoning, at least as it applies to the facts of this case. Stare decisis also does not preclude review where there are factual distinctions between the present and former case. And there are certainly factual distinctions between this case and the Watkins case. The Watkins case was not addressing the eligibility of a candidate where that candidate is the individual who has signed nominating conditions and then filed. It was addressing just the validity of signatures. Moreover, the Watkins case, I think it's also important to address, it's a plurality decision. It was two justices voting in favor of the majority opinion in the case, and the third justice pointed out that, wait a minute, we don't even need to craft this rule in this case to reach our decision. Even if the objector is right, there are sufficient signatures here for this candidate to remain on the ballot, even if these signatures are invalid. Courts, I think, are supposed to avoid crafting broad rules if there is a narrower way to address the case. And I think that was the point that the third justice in the Watkins decision was trying to make, which I think reinforces my point that Watkins has some, it has a basis to, at the very least, question whether or not it should be used beyond the specific facts that were found in that case. The petitioner's interpretation, the fourth argument that we're presenting today, Your Honors, is that the petitioner's interpretation of Section 8.8 does not render the statute unconstitutional. As I cited before, the state has a legitimate interest in curtailing rating by members of opposing political parties and preserving the integrity of the electoral process, and that's been the law in Illinois since the Sperling decision. Sperling court found that an even more restrictive provision, and that was the two-year non-switch rule, which is no longer the law in Illinois, but the Sperling court found that that even more restrictive rule was constitutional. The Haskell Court states in its opinion that where Section 8.8 today is an even narrower holding than that was, it issues in Sperling and is, on its face, constitutional. The fact that the petitioner's interpretation effectively prohibits Candidate Moeller from running as a candidate for either party is an issue that the Appley makes in their brief. But again, I don't believe that that renders our interpretation unconstitutional. Restrictions on candidates can lawfully be more burdensome than those of members of the general public, and that's been the law against since Sperling. Also, the objector's interpretation does not prevent Candidate Moeller from running as an independent candidate in this election or otherwise identifying as a member of the Democratic Party or voting in the Democratic primary or even being a candidate for the Democratic nomination for State Representative in the 43rd District in the next election cycle. This is a narrowly tailored remedy to the bars of the prohibition in Section 8.8 of the Election Code. Moeller does not cite a single case to support her argument that this is unconstitutional. They just argue that. The U.S. Supreme Court has found that a state can reasonably classify voters by political party and impose regulatory restrictions that further the state's important interest in preserving the integrity of the electoral process by preventing party rating. And Moeller's interpretation of the statute, I think, would actually work against the state interest in doing so. It would, again, as I argued before, facilitate party rating, at least under the facts of this case. Which raises another issue, and that is that if the Court were to affirm the decision of the Electoral Board and the decision of the Circuit Court, there is no adverse penalty here to a candidate who has admittedly violated Section 8 of the Election Code by signing a nominating petition for a candidate of a different political party and stating under oath on that nominating petition that I am a qualified primary electoral of the Republican Party and then signing and filing documents with the State Board of Elections saying the exact opposite thing. The only person here who would suffer an adverse impact if this Court were to affirm is the candidate who didn't know that somebody who was a member of a different political party or may not have known at the time someone was going to remain a member of the other political party signed her nominating petition and could have possibly lost a valid signature on her nominating petition. Now for Ms. Wegman that didn't make a difference in this case, but it could have. If she had filed the minimum number of signatures and then someone objected with knowledge that Ms. Moeller had signed her nominating petition and under the Watkins rule invalidated that signature, then Ms. Wegman could have been deemed ineligible. If this Court were to agree with your position, what would be the practical effect for the 43rd Representative District? Well, my understanding is that there is a candidate who has filed a statement of intent to be a write-in and is receiving write-in votes. And that's certainly an option for anybody even. The practical impact at this point I'm not certain of, but I do believe there is somebody who is legally qualified to receive votes in this election cycle and could be elected as a State Representative even if Ms. Moeller is deemed ineligible. Finally, on the issue of constitutionality, if this Court were to accept the argument that simply because Ms. Moeller would be ineligible to be a candidate for either of the major political parties in this state in this election cycle, if the Court finds that their argument is correct, that that makes it unconstitutional and infringement of First Amendment Association rights, I think then the Court should look at the State Constitution's residency requirement. The residency requirement of the State Constitution says that you cannot run for State Representative unless you have lived in the district for the two years preceding the election. So anybody who has moved into a district can't be a candidate for either political party for the first two years they move into a district. They can vote in that party's primary, they can identify as a member of that party, but they can't be a candidate for State Representative for a member of that party. So if the issue is that anything is spatially unconstitutional if it precludes you from being a candidate for State Representative for either major political party, if that's spatially unconstitutional, and I think that's the Eppley's argument, then the Court would have to accept that the residency requirement of the State Constitution is also violative of the First Amendment. I don't think there's any real issue here that the constitutionality of the statute is sufficient. In conclusion, for the foregoing reasons, the decision of the Board of Elections and the trial court should be reversed, and this court should enter an order directing that the candidate's name be stricken from the ballot as the Democratic nominee for State Representative in the 43rd District. Thank you. Thank you, Mr. Meyer. You will have a rebuttal if you so choose. Mr. Casper. Thank you, Justices. Good morning. Michael Casper on behalf of the Appellant Candidate. I'd like to begin with the statutory language that Mr. Meyer talked about that he alleges Representative Moeller has violated. That's Section 8-8 of the Election Code, which says, quote, a qualified primary voter, quote, may not sign petitions for or be a candidate in the primary of more than one party, close quote. So the applicable language in the primary is what the issue is. And of course, the primary election is over. The relief that Mr. Meyer seeks is no longer possible. Ms. Moeller's name appeared on the primary election ballot. And in his brief here in this court, he's changed the remedy that he seeks. He seeks that her name be removed from the general election ballot. But you don't have jurisdiction to do that. Your jurisdiction, although your jurisdiction, you hear this case under Supreme Court Rule 303, is an appeal from the Circuit Court. The Circuit Court got jurisdiction under Section 10-10 of the Election Code, which is administrative review. And so the relief that he seeks, that her name not appear on the ballot, is for violating a statute that doesn't even apply to the general election. That statute has no application in the election that is going on right now. So this case is moot under the Supreme Court's rules on the Goodman case and in the Sinkes case. The case is moot. So the question for this court is whether or not the public interest exception should be applied to the mootness doctrine. And the public interest, as we both cite in our briefs, the public interest exception applies when three circumstances are present. Number one, if it's a question of public interest, and the Supreme Court has held election law questions are public interest. So I'll concede that one. The second one is whether or not administrators, election authorities, are in need of guidance for the conduct of elections. Well, they fail in this instance. As you recognize, Justice Turner, this rule, the first signed rule, has been administered effectively and efficiently by election authorities for over 30 years. So election authorities aren't in need of guidance. There's not a split between electoral boards or circuit courts. There's never, ever been a decision adopting the petitioner's argument. Never, in any case, in any electoral board, in any court, anywhere in the country that I've been able to find. So I think they fail that instance. And the second prong of the public interest exception, I think they fail. The third is whether or not this is a circumstance that's likely to occur. Mr. Mayer just said the facts are so crazy in this case. I don't think it's likely to occur. That's a debatable question. So I think this case is moot, and the public interest exception should not be applied. And what is the consequence? Justice Turner, you just asked that question. What is the consequence of a reversal here? Well, not only does it affect my client, Representative Mueller, and preclude her from being reelected, what about the voters who signed her nominating petitions? What about the voters who voted for her in the primary election? What about the voters who have voted for her in this election? Early voting started weeks ago. Absentee balloting started before. You could take judicial notice of the fact that as of today, 1,700 people have voted in this election. And so I think that you have to weigh that in deciding whether or not this case is moot. I stood in front of this panel four months ago on a case involving the primary election. That case, it was the same facts. It was the same procedural history. It came from the Electoral Board, the State Board of Elections, went through the Sangamon Circuit Court. The appellants filed a motion to expedite. I did not oppose it. It was granted. And we heard the case. It was resolved in plenty of time for the election. But today, there was no motion to expedite the docket in this case. And so today, the people who suffer from a reversal in this case is not only, like I said, Representative Mueller, but all the people who voted for her already. And what is the practical effect of this? The ballots are already printed. They're on the street. They're out. The election code says that a vacancy occurring less than 15 days before the election cannot be filled. And so Representative Mueller's name is going to appear on the ballot on election day, unless you order that somehow they reprint all of the ballots or something like that. So I think this case is moot, and it doesn't warrant the application of the public interest exception. Going on to the merits of the case, I think the law on this question is fairly well settled. It's not particularly complicated. And the Watkins case and the Rosenzeit case stand for the same proposition, that if a person signs nominating petitions for more than one party, the first one counts and the second one doesn't. And the Watkins case, in establishing this rule, said that supports the laudable public policy that citizens ought to be encouraged to participate in the primary election process. And what the appellant is asking you to do is to change that and to say that a person who does this, and most people, I agree with Mr. Meyer, most people who sign for more than one party don't understand the rule, and they do it by mistake because people are polite and they like to accommodate candidates. His rule would say you cannot participate in either party. And that has never been the rule in Illinois or in any other state that I'm aware of. Instead, the rule enunciated by Watkins and accepted by Rosenzweig, and Rosenzweig, the candidate signed for one party then signed a statement of candidacy for a different party, and that same rule applied. The first one was valid, the second one wasn't. And so the rule that Rosenzweig adopted is the same rule as Watkins. First in time counts, any subsequent ones are invalid. And so his attempts, Mr. Meyer's attempts to distinguish Rosenzweig I think failed because what the court did there is only invalidate the second act. It didn't say anything about the first act. It didn't invalidate that first signature. That's what Mr. Meyer is saying. Mr. Meyer's argument to you is that the rule of Watkins and of Rosenzweig, the first in time rule, should be changed so that there's not... The first in time rule establishes this policy here in Illinois that a voter can affiliate with one political party's nomination process. Mr. Meyer would ask you to change that, that in this circumstance that voter would not be able to affiliate with either political party. That's where the constitutional problem comes in. So the question for this court is whether we should change the consequence of signing for more than one party from a single affiliation rule to a non-affiliation rule or a zero affiliation rule, a zero tolerance policy. And I think, number one, that that would be contrary to the Watkins decision and the statement that they made, that that promotes the laudable public policy of encouraging And number two, the question then is, okay, assume that this court decides to accept Mr. Meyer's argument that there should be a zero tolerance policy, a non-affiliation. Should that be applied retroactively to Representative Moeller? And that's where I got into my stare decisis argument in the brief. The Watkins and Rosenzweig first signed rule has been in place for well over 30 years. So Representative Moeller had a right to rely on that when she was gathering nominating papers. Should she have signed that other petition? That's an arguable question. I assume that there's no evidence in the record for this. I assume that she was being polite and there was some evidence in the record about how it occurred that she came to sign that Republican petition for a local candidate, Ms. Wegman. But what that rule does is stare decisis then allows Ms. Moeller to rely on the law as it's established. So if this court decides to change the rule, then change it going forward. But it shouldn't have an adverse impact on Ms. Moeller who relied on the law that was well established, never been challenged, never been challenged, never signed her petitions, voted for her in the primary and voted for her in the general election. Finally, I think that if you do adopt that non-affiliation rule, that would render the statute unconstitutional. Mr. Mayor is incorrect. I did cite cases in that argument, United States Supreme Court cases about party rating. Prevention of party rating is a very legitimate goal. And what the U.S. Supreme Court said in the Rosario case that I cited in our briefs, it prevents the shifting of a block of voters from one party to try and influence another party's election. And what our rule, our first signed rule does is it prevents that, as Mr. Mayor acknowledged. If you're a Democrat, if you affiliate with the Democrats by signing a petition, your attempt to infiltrate, for lack of a better word, the Republican Party is invalid and vice versa. But what Mr. Mayor is asking you to do is say not that you can't raid the Republican Party, but you're also then thrown out of your own party. That's where the constitutional problem lies. Is that a Democrat who signs for a Republican, not that that action is invalid, but the first action in affiliating with the Democrats in the first place is invalid. And that's, I think, what causes the constitutional problem. It violates Watkins' rule that people ought to be encouraged to participate in their party nominating process and not sort of have these rules apply that would discourage that participation. And so the problem, the First Amendment problem with Mr. Mayor's argument is that participating in the political process is core fundamental First Amendment speech. The right to affiliate with a political party is at the very core of the First Amendment. And the First Amendment rights, there can be limits on those, obviously under the appropriate circumstances if they survive a strict scrutiny test. And a limit on the First Amendment, which says you may affiliate with one party per election, but not two, survives that test for the anti-party rating rules. But a rule that says you may not participate in any party nomination process violates that rule. And I think it would not survive a constitutional challenge. And Mr. Mayor in his reply brief points out, well, there's never been a case that has declared such a rule unconstitutional. And that's true. And the reason for that is that no court has ever applied the rule the way he wants them to. Never in the history of our country have I found a case that said a person could be ineligible to be both a Democrat and a Republican because of the Constitution. I think Mr. Mayor's arguments are well-founded. I think if they are, it raises serious constitutional questions. And then finally, on this question of victim, in his reply brief, Mr. Mayor uses the word victim. The local candidate, Ms. Wagner, for recorder. Let me interrupt myself and say, there's no allegation anywhere in the record that Ms. Mueller was trying to infiltrate the Republican Party, that she was trying to influence the outcome of the Republican primary for recorder of deeds. There's nothing that would suggest that. And there is a remedy in the law for this. Ms. Wagner, she's not without recourse. If someone signs your petition and you don't want that signature to appear on your petition, you can strike it out. The election code says, you know, if Donald Trump signs a Democratic petition, you can strike it out. Or Hillary Clinton signs a Republican, that Republican candidate has the ability to eliminate it prior to it being filed. That could have been done in this case. That's what protects Ms. Wegman. Ms. Wegman going through her petition says, oh, Anna Mueller, she's a prominent Democrat. Maybe I don't want that name on my petition. So it's not a completely, it's not as difficult in this case as it is perhaps in others. Now, I admit there are instances where it will be harder to track that because petitions are generally filed at the same time. But that's not evident here. So I would just close by saying that I have been unable to find any court, any electoral board that has ever adopted this position that would preclude a petition signer from being a member of either political party in a primary election. And I think that to the extent that that rule was applied and it silenced citizens and discouraged them rather than encouraged them to participate in the political process and the nomination process of political parties would render it on the basis that, first of all, I would ask that you dismiss the appeal on the basis that the case is moved. And if not, that you would affirm the decisions of the Board of Elections and the Circuit Court. If there's nothing further, I'll conclude. I see no further questions. Thank you, Mr. Kasper. Is there any rebuttal? Briefly, Your Honor. Thank you again, Your Honor. I want to address briefly two issues or two arguments raised by Mr. Kasper. First, the issue of mootness. Mr. Kasper points out that the primary election has taken place and that early voting has started. The standard, though, for whether or not an issue is moot under the Hausfeld decision, the Hausfeld-Rauschenberger case, is whether or not effectual relief can still be afforded by the court. In the Hausfeld case, the Illinois Supreme Court decision, the primary election had already taken place. Mr. Rauschenberger had received the votes and been nominated as the Republican Party's candidate for State Senate in, I think, the 22nd State Senate District. Notwithstanding that fact, the Illinois Supreme Court found that the case was not moot because effectual relief, although not the relief sought in the initial petition to prevent him from being a candidate or having his effectual relief barring him from being a candidate in the general election, could still be afforded and found that the case, therefore, was not moot. Alternatively, even if the court does find that it is moot, I think Mr. Kasper has even conceded that the public interest exception may apply here. And in our brief, we've articulated an argument as to why I think in the alternative the public interest exception does apply in this case. Secondly, Mr. Kasper talks about the impact that this decision could have on voters or the people who have cast votes. He talks about the impact it will have on Ms. Moeller's candidacy. What he doesn't talk about, though, is how, under his interpretation, any of the public policy behind Section 8.8 is afforded or given meaning in this case. In effect, he says that under these facts where someone has violated the statute, admittedly violated the statute, there is no penalty to them. And that it's incumbent upon the person, the candidate, who didn't violate the statute to go through, scrub their petitions, and strike out the signatures by people who knew or should have known that they were violating the law when they signed two petitions. As much as, Your Honor, I understand that there may be some concern over the relief that could be afforded that would give any meaning to the public policy purpose behind Section 8.8. The only other alternative advanced by Mr. Kasper is that there be no penalty to Ms. Moeller who has admittedly violated the statute. That cannot be what the legislature intended when they drafted and implemented Section 8.8 of the Election Code. And for those reasons and the reasons in our briefing as argued earlier today, we'd ask that the decision of the Circuit Court and the Electoral Board be reversed and the relief that we sought in our petition be granted. Thank you. Thank both of you. The case is submitted and the Court stands in recess until after lunch.